# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# FORT MYERS DIVISION

AVE MARIA UNIVERSITY,

    Plaintiff,

v.                                      Case No: 2:13-cv-630-JSM-CM

SYLVIA BURWELL, *et al.*,

    Defendants.

## ORDER

THIS CAUSE comes before the Court upon Plaintiff Ave Maria University's ("Ave Maria") Motion for Preliminary Injunction (Dkt. 52), Defendants' Opposition (Dkt. 53), and Plaintiff's Reply (Dkt. 56).  Upon consideration of the record, the submissions of the parties, and the relevant law, it is the Court's conclusion that Ave Maria's motion for preliminary injunction should be granted.

## BACKGROUND

Ave Maria seeks a preliminary injunction enjoining the Defendants from enforcing the mandate issued pursuant to 42 U.S.C. § 300gg-13(a)(4) and implementing guidance and regulations (the "Mandate") of the Patient Protection and Affordable Care Act on the grounds that it violates the Religious Freedom Restoration Act, 42 U.S.C. § 200bb *et seq.* ("RFRA"), and the First Amendment of the United States Constitution.

Defendants do not dispute that Ave Maria is a non-profit Catholic university purposed with "educat[ing] students in the principles and truths of the Catholic faith".   (Pl.

Br. at 6). One such element of the Catholic faith that Ave Maria holds and professes concerns the sanctity of life. Ave Maria "believes that each human being bears the image and likeness of God, and therefore that any abortion—including through post-conception contraception—ends a human life and is a grave sin." *Id.* at 6-7. Ave Maria also believes that sterilization and the use of contraception are morally wrong.

Ave Maria offers healthcare coverage to its employees through its insured employee healthcare plans. Ave Maria's religious convictions forbid it from providing contraception, sterilization, and abortifacient products in its employee healthcare plans.

In March 2010, Congress enacted the Patient Protection and Affordable Care Act ("ACA"). 124 Stat. 119 (2010). The ACA requires employers with 50 or more full-time employees to offer "a group health plan or group health insurance coverage" that provides "minimum essential coverage." 26 U.S.C. § 5000A(f)(2); §§ 4980H(a), (c)(2). The ACA requires that any employer in this category must "provide coverage for and shall not impose any cost sharing requirements for" certain preventative service categories. 42 U.S.C. § 300gg-13(a). With respect to women, the Mandate requires "such additional preventative care and screenings…as provided for in comprehensive guidelines supported by the Health Resources and Services Administration". *Id.* The Health Resources and Services Administration ("HRSA"), a component of the Department of Health and Human Services ("HHS"), adopted comprehensive guidelines that were formulated by the private Institute of Medicine ("IOM") to define the additional "preventive care and screenings". IOM's guidelines provide that all FDA-approved contraceptives, sterilization procedures, and related education and counseling are included in the definition of additional

preventative care and screenings under the Mandate. A plan or issuer that fails to provide coverage for these preventative services and screenings will incur substantial tax penalties under the Internal Revenue Code. *See e.g.*, 26 U.S.C. § 4980D(b)(1) (taxing organizations that offer group health plans that do not include coverage for preventative care and screenings under the Mandate $100 per day for each affected individual); 26 U.S.C. § 4980H(c)(1) (taxing organizations that do not offer health coverage and have at least one full-time employee that has certified to the employer under section 1411 of the ACA $2000 per employee each year).

Several categories of employers are exempt from the Mandate pursuant to federal regulations created by HRSA. One such exemption exists for "religious employer[s]." 45 C.F.R. § 147.131(a). A religious employer is defined as an organization that operates as a nonprofit entity as referred to in the Internal Revenue Code provisions 26 U.S.C. § 6033(a)(3)(A)(i) and (iii), which includes churches, their integrated auxiliaries, conventions or associations of churches, and the exclusively religious activities of any religious order. 45 C.F.R. § 147.131(a) (cross-referencing 26 U.S.C. § 6033(a)(3)(A)(i) and (iii)). Other exempted employers include those providing "grandfathered health plans"—plans that existed prior to March 23, 2010, and that have not made specified changes after that date—and employers with fewer than 50 employees. *See Burwell v. Hobby Lobby Stores, Inc.*, 134 S. Ct. 2751, 2764, 189 L. Ed. 2d 675 (2014) (citing 42 U.S.C. §§ 18011(a), (e), and 26 U.S.C. § 4980H(c)(2)). Employers with "grandfathered health plans" need not comply with many of the ACA's requirements, including the Mandate, while employers with fewer than 50 employees are not required to provide health

insurance at all. *Id.* Ave Maria does not qualify for any of these exemptions.

On July 2, 2013, the Department of Labor, HHS and the Treasury (collectively, the "Departments") published final rules regarding the federal regulations that implement the Mandate: 78 Fed. Reg. 39,870 (July 2, 2013) (the "2013 Final Rules"). The 2013 Final Rules maintain the exemptions for religious employers, employers with "grandfathered health plans", and employers with less than 50 employees. The 2013 Final Rules also include "accommodations" for eligible organizations. 78 Fed. Reg. at 39,874-78; *see also* 45 C.F.R. § 147.131(b)-(c).

Pursuant to the 2013 Final Rules, an "eligible organization" is an organization that: (1) opposes providing coverage for some or all of the contraceptive services required by the Mandate and its implementing regulations on account of religious objections; (2) is organized and operates as a nonprofit entity; (3) holds itself out as a religious organization; and (4) self-certifies that it satisfies the first three criteria pursuant to the procedure included therein. *See* 78 Fed. Reg. at 39,874. Self-certification under the 2013 Final Rules requires eligible organizations to execute and deliver a specific form to their insurers, self-certifying that they are eligible for the accommodation. Upon receipt of the requisite form, the EBSA Form 700 ("Form 700"), from an eligible organization, the organization's insurance issuer is required to "assume sole responsibility for providing separate payments for contraceptive services directly for plan participants and beneficiaries, without cost sharing, premium, fee, or other charge to plan participants or beneficiaries or to the eligible organization or its plan." 78 Fed. Reg. at 39,876; *see also* 45 C.F.R. § 147.131(c)(2)(i). According to the 2013 Final Rules, "nonprofit religious organizations that qualify for these

4

accommodations are not required to contract, arrange, pay, or refer for contraceptive coverage; however, plan participants and beneficiaries (or student enrollees and their covered dependents) will still benefit from separate payments for contraceptive services without cost sharing or other charge" pursuant to the implementing regulations. 78 Fed. Reg. at 39,874.[1]

On July 3, 2014, the Supreme Court issued an interim order in connection with an application for an injunction, enjoining the government from enforcing the Mandate against an eligible organization pending appeal in *Wheaton College v. Burwell*, 134 S. Ct. 2806 (2014). The interim order in *Wheaton College* held that to obtain injunction pending appeal, an eligible organization is not required to follow the notice procedures for accommodation in the 2013 Final Rules. *See id.* at 2807. The order stated

> [i]f the applicant informs the Secretary of Health and Human Services in writing that it is a nonprofit organization that holds itself out as religious and has religious objections to providing coverage for contraceptive services, the [Departments] are enjoined from enforcing against the applicant the challenged provisions of the [ACA] and related regulations pending final disposition of appellate review. To meet the condition for injunction pending appeal, the applicant need not use the [Form 700], and need not send copies to health insurance issuers or third-party administrators.

---

[1] The Departments present "various options" for insurance issuers to "achieve[] cost neutrality, notwithstanding that they must make payments for contraceptive services without cost sharing, premium, fee, or other charge to the eligible organization, the group health plan, or plan participants or beneficiaries" in the 2013 Final Rules. *Id.* at 39,877. One such option is "to treat the cost of payments for contraceptive services for women enrolled in insured group health plans established or maintained by eligible organizations as an administrative cost that is spread across the issuer's entire risk pool, excluding plans established or maintained by eligible organizations given that issuers are prohibited from charging any premium, fee, or other charge to eligible organizations or their plans for providing payments for contraceptive services." *Id.* at 39,878. The Departments maintain that under the various options, "the eligible organization would not contract, arrange, pay, or refer for contraceptive coverage." *Id.*

*Id.* at 2807. The Supreme Court noted "[n]othing in this interim order affects the ability of the applicant's employees and students to obtain, without cost, the full range of FDA approved contraceptives," or precludes the Government from relying on the notice by the applicant "to facilitate the provision of full contraceptive coverage under the Act." *Id.*

In light of the Supreme Court's ruling in *Wheaton College*, the Departments issued interim final regulations (the "Interim Final Regulations") that augmented the accommodation process contained in the 2013 Final Rules. 79 Fed. Reg. 51,092. The Interim Final Regulations "provide an alternative process for the sponsor of a group health plan or an institution of higher education to provide notice of its religious objection to coverage of all or a subset of contraceptive services, as an alternative to the EBSA Form 700 method of self-certification." *Id.* at 51,094. The Interim Final Regulations provide that

> an eligible organization may notify HHS in writing of its religious objection to coverage of all or a subset of contraceptive services. The notice must include the name of the eligible organization and the basis on which it qualifies for an accommodation; its objection based on sincerely held religious beliefs to providing coverage of some or all contraceptive services (including an identification of the subset of contraceptive services to which coverage the eligible organization objects, if applicable); the plan name and type (i.e., whether it is a student health insurance plan within the meaning of 45 CFR 147.145(a) or a church plan within the meaning of ERISA section 3(33)); and the name and contact information for any of the plan's third party administrators and health insurance issuers.

*Id.* at 51,094-95. Under this alternative process, when an eligible organization that provides a notice to HHS, HHS will send a separate notification to the eligible organization's health insurance issuer informing the issuer that HHS has received the eligible organization's notice and describing the obligations of the issuer to "[e]xpressly


exclude contraceptive coverage from the group health insurance coverage provided in connection with the group health plan; and…[p]rovide separate payments for any contraceptive services required to be covered…for plan participants and beneficiaries for so long as they remain enrolled in the plan." 29 C.F.R. § 2590.715–2713A. As with the receipt of the Form 700, upon receiving notice from HHS that an eligible organization has objected to coverage of contraceptive services pursuant to the interim final regulations, the eligible organization's insurance issuer is required to assume sole responsibility for providing separate payments for contraceptive services directly for plan participants and beneficiaries, without cost sharing, premium, fee, or other charge to plan participants or beneficiaries or to the eligible organization or its plan. *See* 79 Fed. Reg. at 51,095 ("Issuers remain responsible for compliance with the statutory and regulatory requirement to provide coverage for contraceptive services to participants and beneficiaries, and to enrollees and dependents of student health plans, notwithstanding that the policyholder is an eligible organization with a religious objection to contraceptive coverage that will not have to contract, arrange, pay, or refer for such coverage.")

Ave Maria may qualify as an eligible organization under the 2013 Final Rules or the Interim Final Regulations if it self-certifies pursuant to either of the accommodations included therein. On July 30, 2014, Ave Maria provided notice (the "Notice") to HHS of its objection to the Mandate, stating in relevant part, "Ave Maria University is a non-profit organization that holds itself out as religious and has religious objections to providing coverage for the contraceptive services described in the relevant rules." (Dkt. 47-1, Ex. A). The Notice did not include any information regarding Ave Maria's insurance issuer's

contact information, nor did it include Ave Maria's plan name or plan type. *Id*. Defendants do not consent to a preliminary injunction enjoining them from enforcing the Mandate against Ave Maria upon renewal of its healthcare plan.[2] Ave Maria's renewal of its healthcare plan will occur on November 1, 2014.

## DISCUSSION

Having considered the record, the submissions of the parties, and the relevant law, the Court concludes that the motion should be granted. The Court reads the Eleventh Circuit's holding in *Eternal Word Television Network, Inc. v. Sec'y, U.S. Dep't of Health & Human Servs.*, 756 F.3d 1339 (11th Cir. 2014), as supporting the issuance of a preliminary injunction here.

The Court is mindful of certain distinctions between the requirements of the 2013 Final Rules that were at issue in *Eternal Word*, and the notice requirements under the Interim Final Regulations at issue in the instant case. In *Eternal Word*, under the 2013 Final Rules, an eligible organization was required to submit the Form 700 to its insurance issuer in order to self-certify. *See id.* Here, pursuant to the Interim Final Rules, Ave Maria may, instead, send a notice containing certain information about its insurance issuer and plan directly to HHS in order to self-certify. It is the Court's conclusion that this distinction is not so significant as to warrant departure from the Eleventh Circuit's precedent in *Eternal Word*. Likewise, the Court is not persuaded that *Eternal Word's*

---

[2] HHS has previously granted Ave Maria relief in the form of a one-year "safe harbor" period during which HHS declined to enforce the Mandate against Ave Maria.

8


procedural posture substantially distinguishes it from the instant case. In *Eternal Word*, the Eleventh Circuit considered the appellant's motion for injunction pending appeal after the district court granted the government's motion to dismiss and the appellant filed its notice of appeal. In the appellant's "time sensitive" motion, appellant argued that an injunction was necessary to prevent the government from enforcing the Mandate against it upon the first day of its insurance plan year; the same day it would become subject to the Mandate. As is the case here, the date of the beginning of appellant's insurance plan year was less than one month away. Because the circumstances that gave rise to the Eleventh Circuit's determination that an injunction was appropriate pending appeal in *Eternal Word* are analogous to those presented in the instant case, the precedent established in *Eternal Word* is appropriately applied here. It is therefore

ORDERED AND ADJUDGED that:

1. Plaintiff Ave Maria University's Motion for Preliminary Injunction (Dkt. 52) is GRANTED.

2. Defendants are enjoined from enforcing against Ave Maria University the substantive requirements set forth in 42 U.S.C. § 300gg-13(a)(4) and its implementing guidance and regulations, and from assessing fines or taking other enforcement action against Ave Maria University for noncompliance.

3. This preliminary injunction takes effect immediately, and shall remain in effect pending entry of final judgment in this matter or further order of this Court.

4. This case is stayed pending resolution of the appeal in *Eternal Word Television Network, Inc. v. Sec'y, U.S. Dep't of Health & Human Servs., et al.*, No. 14-12696-CC (11th Cir. filed July 28, 2014).

5. The Clerk is directed to administratively close this case.

6. The parties are directed to notify the Court of the final disposition of *Eternal Word Television Network, Inc. v. Sec'y, U.S. Dep't of Health & Human Servs., et al.*, No. 14-12696-CC (11th Cir. filed July 28, 2014) within 30 days thereof.

**DONE** and **ORDERED** in Tampa, Florida, this 28th day of October, 2014.

_____
JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

Copies furnished to:
Counsel/Parties of Record

S:\FT MYERS\13-cv-630 order grant prelim inj.docx

10